IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HOWARD CLARK, TODD HALL,
ANGELA PIRRONE, individually and
on behalf of all others similarly situated,

Plaintiffs,

v.

THE HERSHEY COMPANY, a Delaware
corporation,

Defendant.

No. C 18-06113 WHA

**ORDER RE MOTION TO
DISMISS AND CONVERT
MOTION TO DISMISS INTO
MOTION FOR SUMMARY
JUDGMENT ALLOWING
IMMEDIATE DISCOVERY**

## INTRODUCTION

Malic acid stars in this food case. The issue concerns its alleged use as an artificial flavoring agent. Defendant's motion to dismiss for failure to state a claim is **GRANTED IN PART AND DENIED IN PART.** For the following reasons, this order converts the FRCP 12(b)(6) motion to dismiss into a motion for summary judgment and allows immediate discovery.

## STATEMENT

The Hershey Company has a product line of Brookside Dark Chocolate candy balls filled with fruit-flavored gel. These chocolate balls are sold in bag-shaped packaging, with photos of the predominant fruit flavors on the front. Some of the packages have banners across the top of the front stating "NO ARTIFICIAL FLAVORS, NO ARTIFICIAL COLORS." Other packages do not have that banner but do say "with other Natural Flavors," underneath the named fruit flavors.

Plaintiffs allege that Brookside Dark Chocolate candy products violate California, New York, and federal statutes. *First*, each of the products contain malic acid as an additional flavoring ingredient that simulates and reinforces the characterizing flavor, so the front label allegedly should disclose that malic acid serves the function of adding flavor rather than misleadingly suggesting that the product is flavored only by natural fruit juices. *Second*, the back-of-the-package list of ingredients identifies malic acid flavoring only as "malic acid," which implies the natural form of malic acid instead of "d-l malic acid," which is allegedly actually used, thereby concealing that the products contain a synthetic artificial flavor (First Amd. Compl. ¶¶ 29–31).

Plaintiff Howard Clark purchased a Brookside Dark Chocolate — Acai and Blueberry Flavor — product for personal consumption in July 2018. Plaintiff Todd Hall purchased Brookside Dark Chocolate products for personal consumption several times since 2014, most recently in early 2018. Plaintiff Angela Pirrone purchased Brookside Dark Chocolate products for personal consumption several times since 2012, most recently in August 2018 (First Amd. Compl. ¶¶ 62–63, 65, 67).

In purchasing the products, plaintiffs allege that they relied on and were deceived by the labeling and advertising on the Brookside front packaging. Each package at issue showed color photographs of large chunks of chocolate, the actual named fruit that predominantly flavors the candy balls in the package, and two candy balls, one cut open to show a fruit-flavored gel interior surrounded by a chocolate shell. Plaintiffs allege that Hershey warrants that its Brookside Products contain "No Artificial Flavors" (First Amd. Compl. ¶ 25).

As required by the FDA, the products contain a "Nutrition Facts" panel on the back of the packaging that list all ingredients, in descending order of predominance. According to the plaintiffs, the Acai and Blueberry label lists the following ingredients: "Dark Chocolate, Sugar . . . Malic Acid, Tapioca Dextrin, Canola Oil, Acai Puree Concentrate, Sodium Bicarbonate, Ascorbic Acid, Sodium Citrate, Citric Acid (To Maintain Freshness), Resinous Glaze" (First Amd. Compl. ¶ 27).

In October 2018, Howard Clark filed a putative class action complaint in state court against Hershey that stated its Brookside Dark Chocolate fruit-filled candy was fraudulently mislabeled and that he had purchased the products, relying on the package labeling that claimed there were no artificial flavors. Plaintiff alleged that he would not have paid the "premium" purchase price for the products if he had been aware of the products' true ingredients. The action was removed here. In November 2018, Hershey filed a motion to dismiss the complaint. Instead of responding to the motion to dismiss, plaintiff filed a first amended complaint wherein he added two additional plaintiffs, Tod Hall and Angela Pirrone, along with making other changes. In December, Hershey filed its motion to dismiss the first amended complaint, which we now consider (Dkt. No. 18).

In this putative class action, plaintiffs allege twelve separate claims, including: (1) fraud by omission, Cal. Civ. Code §§ 1709–1710, (2) negligent misrepresentation, Cal. Civ. Code §§ 1709–1710, (3) violation of California's Consumers Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1750, *et seq.*, (4) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, unfair and unlawful prongs, (5) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, (6) breach of express and implied warranties, Cal. Com. Code §§ 2313 and 2314, (7) violations of §§ 349 and 350 of New York General Business Laws, and (8) claims for breach of express and implied warranties under New York U.C.C. §§ 2-313 and 2-314.

**ANALYSIS**

1. **MOTION TO DISMISS UNDER FRCP 12(B)(1).**

Hershey argues that plaintiffs do not have standing and lack a justiciable injury, contending that plaintiffs' counsel recruited clients through a fishing website, www.classactionrebates.com, which promises people that they can cash in on class settlements. After signing up, registrants receive email solicitations from plaintiffs' counsel asking if registrants had purchased specific products and offering the opportunity to "join new class

actions" (Dkt. No. 18 at 2).  Hershey alleges that plaintiffs' counsel's misleading solicitation campaign fabricated this lawsuit through pre-August 2018 internet postings that stated:

> Brookside Dark Chocolate Class Action Investigation, Have you purchased Brookside Dark Chocolate products?  If so, then you may be able to join a free class action lawsuit investigation. To see if you qualify to join this free class action lawsuit investigation, please contact The Law Offices of Ronald A. Marron" (Dkt. No. 18, Exh. 4 at 2–3).

Hershey has had previous interactions with counsel's use of the website to solicit clients. In 2015, plaintiffs' counsel responded to Hershey, "I agree that the email blast was a one time event and I (sic) no further email blasts or advertising is forthcoming from my office or classactionrebates.com" (Dkt. No. 18, Exh. 4 at 4).  Hershey alleges that plaintiffs decided to purchase the products at some point after publication of counsel's Brookside advertisements on August 1, 2018.  Clark filed his first amended complaint in November 2018, adding plaintiffs Hall and Pirrone.  Hershey argues that because plaintiffs appear to have known about the products' supposed mislabeling prior to purchasing them, they cannot have suffered any justiciable injury for purposes of Article III standing and their claims should be dismissed.

Hershey cites *Guttman v. Nissin Foods, Co., Inc.*, No. 15-cv-00567 WHA, 2015 WL 4881073, *2–3 (N.D. Cal. Aug. 14, 2015), where the district court dismissed a complaint after plaintiff was found to have express prior knowledge of the alleged product mislabeling. In *Guttman,* the plaintiff had filed three prior lawsuits regarding the same ingredient, trans fats, and food labeling.  Here, Hershey only offers speculation of a direct connection between an email solicitation and the supposed enrollment of plaintiffs in this case.  Hershey submits evidence in counsel's declaration and in exhibits requesting judicial notice.  These questions are more appropriate for a summary judgment motion, after discovery on the way in which plaintiffs came to counsel.  This motion is **DENIED** without prejudice to renewal of the issue on a motion for summary judgment.

> 2. **MOTION TO DISMISS UNDER FRCP 12(B)(6).**

In the context of a motion to dismiss under Rule 12(b)(6), the district court cannot consider extrinsic evidence (such as the declarations offered by Hershey in support of the motion

4

under Rule 12(b)(1)). Our gaze focuses on whether plaintiffs have sufficiently pleaded the elements of their claims.

The standard for the California statutes claimed here is the "reasonable consumer" test, which requires a plaintiff to show that members of the public are likely to be deceived by the business practice or advertising at issue. *See Williams v. Gerber Products,* 552 F.3d 934, 938 (9th Cir. 2008). The California Supreme Court has recognized that those laws prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public. *Leoni v. State Bar,* 39 Cal.3d 609, 626 (1985).

Under FDA regulations, malic acid has three prescribed uses in food: as a flavor, a flavor enhancer, or to help control pH. 21 C.F.R. § 184.1069(c). Hershey argues that (1) malic acid is used with pectin in order to balance the pH and therefore to properly gel the fruit flavors at the center of the candy, (2) malic acid is not used as a flavor, and (3) only the Brookside Dark Chocolates with gelled fruit centers have malic acid in their ingredient list. Hershey further argues that plaintiffs fail to allege having done any testing or otherwise provided any facts to support the assertion that Brookside's malic acid is used as a flavor.

In the presence of labeling banners that state "NO ARTIFICIAL FLAVORING, NO ARTIFICIAL COLORING," it is at least plausible that a reasonable consumer seeing the Acai & Blueberry Flavor or Pomegranate packages (First Amd. Compl. ¶ 20) at issue would believe that the candy was made with flavoring from the fruits shown and that there would be no artificial flavoring.

Hershey argues that it properly disclosed malic acid on its nutrition list of ingredients because Hershey used malic acid for an FDA-approved function, pH balancing, and not as a flavor or flavor enhancer. Given the importance of this factual dispute and because "matters outside the pleading are presented to and not excluded by the court," the motion to dismiss must be treated as one for summary judgment under Rule 12(d). In turn, Rule 56(d), which authorizes a court to allow time for discovery during a motion for summary judgment when facts are unavailable to the nonmovant, parties must be given reasonable opportunity to present all

5

material pertinent to the motion. Immediate discovery into these issues is now allowed and supplements on this motion will be filed by **NOON ON APRIL 10, 2019.**

### A. Motion to Dismiss Under FRCP 9(b).

While plaintiffs' claims are not so implausible as to warrant granting Hershey's motion to dismiss on that basis, a number of plaintiffs' claims lack sufficient particularity.

In a similar labeling action, *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2017), our court of appeals held that when the plaintiff's claims for relief are all grounded in fraud, the complaint must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b). Under Rule 9(b), a party must "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Cor. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The purpose of Rule 9(b) is to give notice to defendants of the specific fraudulent conduct against which they must defend. *Bly-Magee v. California,* 236 F.3d 1014, 1018 (9th Cir. 2001).

Plaintiffs' claims under California's Unfair Competition Law, False Advertising Law, Consumer Legal Remedies Act, and plaintiffs' common law claims for fraud by omission and negligent misrepresentation (collectively, Claims (1)-(8)) should be analyzed within the heightened pleading standard of Rule 9(b), as plaintiffs allege deception and fraud throughout their complaint. When a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim . . . the claim is said to be 'grounded in fraud' . . . and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess,* 317 F.3d at 1103–04. Plaintiffs argue that they have satisfied the Rule 9(b) requirements. While this order agrees that plaintiffs have sufficiently pled the "who" and "where" of the charged misconduct for purposes of avoiding a motion to dismiss, this order finds the rest of plaintiffs' averments fail to satisfy Rule 9(b).

The first amended complaint states where plaintiffs purchased their products, but the dates and products purchased are not specific (First Amd. Compl. ¶¶ 62–67), nor is the "why" of plaintiffs' reliance on alleged advertising on products whose labels are shown changing in

6

plaintiffs' own pleadings. The first amended complaint does state which Brookside products are at issue in this case, but not specifically which products were purchased by plaintiffs, nor what was present on the allegedly offending packaging chosen by plaintiffs.

In the first amended complaint, plaintiffs present photos of product labels that do not specifically support their claim. The first photo shows Brookside "Vineyard Inspired" candy, "Chardonnay Grape & Peach Flavors with other Natural Flavors." Significantly, there is no advertising statement on the front of this package that the product has "No Artificial Flavors." The second photo shows "Vineyard Inspired Merlot Grape & Black Currant Flavors with other Natural Flavors." Significantly, once again there is no advertising statement on the front of the package claiming that this product has "No Artificial Flavors." The third photo, "Acai & Blueberry Flavors" allegedly purchased by Plaintiff Clark (First Amd. Compl. ¶ 12), does show a banner at the top of the package that states "No Artificial Flavors." The fourth photo, "Pomegranate Flavor" also shows the banner at the top of the package that states "No Artificial Flavors." The fifth and final photo shows four products; plaintiffs allege this is an example of Hershey's advertisement for Brookside products, but none of the packages state "No Artificial Flavors, and the label photographs are different from the photos listed above. (First Amd. Compl. ¶¶ 20–21.)

Plaintiffs argue, without reference to any well-pled factual allegations in the complaint, that the violations and misrepresentations are similar across product labels (First Amd. Compl. ¶ 25).

Therefore, plaintiffs' claims do not give notice to Hershey of which labels and which packages upon which plaintiffs allegedly relied when making their purchases. Thus, plaintiffs do not "give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1985). Plaintiffs here have failed to meet the heightened pleading standard of Rule 9(b).

Consequently, pursuant to Rule 9(b), Hershey's motion to dismiss, without prejudice, plaintiffs' claims (1) through (8) based on violations of the Unfair Competition Law, False

7

Advertising Law, Consumer Legal Remedies Act and the common law claims for fraud of omission and negligent misrepresentation which do not meet the heightened pleading standard of Rule 9(b) is **GRANTED**.

### B. Express Warranties.

To plead a claim for breach of express warranty, plaintiffs must allege the terms of the warranty, reasonable reliance, and that the breach of that warranty proximately caused their injury. "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. U. Com. Code § 2313(1)b). Plaintiffs allege that the packaging's banner "NO ARTIFICIAL FLAVORS" was part of the basis of the bargain between the parties (Dkt. No. 16 at 25). However, as stated above, plaintiffs have failed to differentiate which fruit flavors made this assertion and also which products they purchased based on those assertions. Brookside products that do not carry the banner affirmatively representing "NO ARTIFICIAL FLAVORS" do not make the warranty that plaintiffs claim. These other Brookside products state only "also with other Natural Flavors," which is not an express warranty of "no artificial flavors."

Hershey's motion to dismiss the claim of breach of express warranty for the products that do not warrant "NO ARTIFICIAL FLAVORS" is **GRANTED**. Hershey's motion to dismiss the claim of breach of express warranty for the products that do warrant "NO ARTIFICIAL FLAVORS" is **DENIED**.

### C. Implied Warranties.

Plaintiffs bring their claim for breach of implied warranty under Cal. Com. Code § 2314 (First Amd. Compl. ¶¶ 158–175). Hershey relies on the "ordinary use" definition in that statute, "Goods to be merchantable must be at least such as are fit for the ordinary purposes for which such goods are used" but that is only § 2314(2)(a). Hershey ignores § 2314(2)(f), which also must be met and upon which plaintiffs rely: "Goods to be merchantable must conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

Hershey's motion to dismiss, without prejudice, the claim of breach of implied warranty for the products that do not warrant "NO ARTIFICIAL FLAVORS" is **GRANTED**. Hershey's motion to dismiss the claim of breach of implied warranty for the products that do warrant "NO ARTIFICIAL FLAVORS" is **DENIED**.

### D. New York General Business Law Claims.

Plaintiffs allege violations of New York General Business Laws § 349, Unfair Trade Practices, and § 350, False Advertising.

General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade or commerce, or in the furnishing of any service in the state of New York. To assert a claim under § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merral & Condit Co.*, 18 N.Y.3d 940, 967 (2012). The New York Court of Appeals has adopted an objective definition of "misleading," under which the alleged act must be "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Cohen v. JPMorgan Chase & Co.*, 498 F.3d 111,126 (2d Cir. 2007). Plaintiffs do not need to prove that a defendant intended to mislead the plaintiff or even that the consumer relied on the act or practice in an unfair trade practice claim. Prevailing plaintiffs may recover actual damages or fifty dollars, whichever is greater, or both, three times the actual damages up to one thousand dollars, and reasonable attorney's fees. N.Y. Gen. Bus. § 349(g–h).

General Business Law § 350 governs deceptive advertisements and product labels. The elements of a claim for relief under this section are that "the advertisement: (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in an injury." *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 300 A.D.2d, 608, 609 (2002). "Similarly, the test is whether the advertisement is likely to mislead a reasonable consumer acting reasonably under the circumstances." *Ibid.* Prevailing plaintiffs may recover actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

9

Claims under New York General Business Law § 349 and § 350 are not subject to the pleading-with-particularity requirements of FRCP 9(b), and thus are subject to the notice-pleading requirements of FRCP 8(a). *Ackerman v. Coca-Cola Co.*, 2010 U.S. Dist. LEXIS 73156, at *87 (E.D.N.Y. 2010). Plaintiffs must plead with requisite "plausibility" that any of the defendant's claims were materially misleading. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"The plausibility standard is not akin to a probability requirement." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Moreover, whether a practice is "deceptive, fraudulent, or unfair" is generally a question of fact that is not appropriate for resolution on the pleadings. *See Williams,* 552 F.3d at 938–940. This argument is therefore beyond the scope of this Rule 8(a) motion.

On this basis, Hershey's motion to dismiss New York General Business Laws § 349 and § 350 causes of action is **DENIED**.

### E. New York Claims for Breach of Express And Implied Warranties.

Under New York U.C.C. § 2-313, an express warranty will be found where the seller has made an affirmation of fact or promise relating to the goods, the natural tendency of which was to induce the buyer to purchase the goods. *Schimmenti v. Ply Gem Indus., Inc.*, 156 A.D.2d 658, 659 (2d Dept., 1989). Express warranty exists under New York Law when a plaintiff shows "that the statement falls within the definition of a warranty, that she relied on it, and that it became the basis of the bargain." *Daley v. McNeil Consumer Prod., Co.*, 164 F.Supp.2d 367, 377 (S.D.N.Y. 2001). Plaintiffs allege that the packaging's banner "NO ARTIFICIAL FLAVORS" was part of the basis of the bargain between the parties (Dkt. No. 16 at 25). However, as before, plaintiffs have failed to differentiate which fruit flavors made this assertion and also which products they purchased based on those assertions. Brookside products that do not carry the banner affirmatively representing "NO ARTIFICIAL FLAVORS" do not make the warranty that plaintiffs claim. These other Brookside products state only "also with other Natural Flavors," which is not an express warranty of "no artificial flavors."

Hershey's motion to dismiss, without prejudice, the New York claim of breach of express warranty for the products that do not warrant "NO ARTIFICIAL FLAVORS" is **GRANTED**.

Hershey's motion to dismiss the claim of breach of express warranty for the products that do warrant "NO ARTIFICIAL FLAVORS" is **DENIED**.

Under New York U.C.C. § 2-314, a warranty that goods are merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Hershey relies on the "ordinary use" definition in that statute, "Goods to be merchantable must be at least such as are fit for the ordinary purposes for which such goods are used," but that is only one part of the N.Y. U.C.C., § 2314(2)(c). Hershey ignores § 2314(2)(f), which also must be met and upon which plaintiffs rely: Goods to be merchantable must "conform to the promises or affirmations of fact made on the container or label if any." N.Y. U.C.C. § 2314(2)(f).

Hershey's motion to dismiss, without prejudice, the claim of breach of implied warranty for the products that do not warrant "NO ARTIFICIAL FLAVORS" is **GRANTED**. Hershey's motion to dismiss the claim of breach of implied warranty for the products that do warrant "NO ARTIFICIAL FLAVORS" is **DENIED**.

### F. Tolling of Statute of Limitations.

Plaintiffs Pirrone and Hall allege claims for purchases dating back to 2012 and 2014, respectively (First Amd. Compl. ¶¶ 64, 66). Plaintiffs' claims, however, are subject to a three- or four-year statute of limitations — significantly shorter than the approximately seven and five years, respectively, that have passed since their alleged purchases.

#### *(1) Delayed discovery.*

Plaintiffs allege that they did not discover that the labeling was "false and misleading until November 2018" (Dkt. No. 28 at 24). Plaintiffs have provided no allegations detailing how they discovered the alleged unlawful labeling. *See Keiholtz v. Lennox Hearth Prods. Inc.*, 2009 WL 2906960, at *3 (N.D. Cal. Sept. 8, 2009) ("To invoke the delayed discovery rule, the plaintiff must plead facts showing . . . [h]ow and when he did actually discover the [facts underlying the claim]."). Thus, plaintiffs have not sufficiently pleaded that the delayed discovery rule applies.

### *(2) Fraudulent concealment.*

"When a plaintiff relies on a theory of fraudulent concealment . . . to save a cause of action that otherwise appears on its face to be time-barred, he or she must specifically plead facts which, if proved, would support the theory." *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 641 (2003). "In order to establish fraudulent concealment, the complaint must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Ibid*. Claims relying on fraudulent concealment must meet the heightened pleading requirements of [Rule] 9(b). *Rambus Inc. v. Samsung Electronics Co.*, 2007 WL 39374, at *6 (N.D. Cal. Jan. 4, 2007). Plaintiffs have provided no facts as to the circumstances under which the fraud was discovered. This order finds plaintiffs have not met their "heavy burden" to plead fraudulent concealment with particularity and, thus, have not adequately pleaded fraudulent concealment to toll the statute of limitations.

### *(3) Continuing Violation.*

Finally, plaintiffs allege that "because defendant's deception continues up to the present, the continuing violation exception tolls all applicable statute of limitations for plaintiffs and all members of the putative Class until defendant's unlawful advertising and labeling is corrected" (Dkt. No. 28 at 26). According to the California Supreme Court, the continuing violation doctrine serves equitable purposes: assuming that plaintiffs' allegations of misbranding are true, it would be inequitable to allow Hershey immunity from this violation. *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th, 1185, 1197 (2013). In *Hunter v. Nature's Way Prods., LLC*, 2016 WL 4262188 (S.D. Cal. Aug. 12, 2016), that court found the plaintiff had adequately pleaded the continuing violation doctrine as an exception to the statute of limitations, but there, plaintiff alleged she purchased the product once a month for the past five years. *Id.* at *12. She alleged that the defendants continued their misrepresentations over the course of five years. Here, again, plaintiffs do not allege they made particularized purchases of products.

Plaintiffs do not allege sufficient grounds for tolling the statute of limitations, so therefore their claims are dismissed, without prejudice, to the extent that they are based on conduct that took place prior to the applicable limitations period. Additionally, California and New York statute of limitations and tolling rules apply to plaintiffs' claims brought under each state's respective laws. *Bancorp Leasing & Fin. Corp. v. Agusta Aviation*, 813 F.2d 272, 274 (9th Cir. 1987) ("In a federal diversity action brought under state law, the state statute of limitations controls"). A claim under New York General Business Law § 349 or § 350 is subject to a three-year statute of limitations and "runs from the time when the plaintiff was injured," not from when plaintiff learns they have been deceived. *Corsello v. Verizon NY, Inc.,* 18 N.Y.3d 777, 789-90 (2012). In addition, a claim for relief for breach of express or implied warranty is subject to a four-year statute of limitations. *Ito v. Dryvit Systems, Inc.,* 16 AD 3d 554, 555 (2d Dept. 2005). The beginning of the limitation period "does not depend on a plaintiff's knowledge of a defect." *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 558 (S.D.N.Y. 2016).

### 3. JUDICIAL NOTICE.

The parties have each submitted documents for judicial notice in connection with the motion and opposition. When reviewing a motion to dismiss for failure to state a claim, a court considers only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). When a plaintiff has appended various exhibits to the complaint, those exhibits may be considered in determining whether dismissal is proper without converting the motion to one for summary judgment. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

Hershey requests judicial notice of sixteen exhibits of court documents, most from putative class actions filed by Howard Clark and/or plaintiffs' counsel (Dkt. No. 18, Exhs. 1–16). In particular, Exhibit 16 is a transcript, and our appeals court found that it was improper to judicially notice a transcript when the substance of the transcript "is subject to varying interpretations, and there is a reasonable dispute as to what the [transcript] establishes." *Reina-Rodriguez v. United States*, 655 F.3d 1182, 1193 (9th Cir. 2011). The exhibits do not

pertain to whether plaintiffs have stated a plausible claim in the current action and are not relevant to this motion to dismiss.

Plaintiffs request judicial notice of a webpage that purports to define "malic acid" (Dkt. No. 28, Exh. 4). Our appeals court has ruled that courts may incorporate a document by reference "in those rare circumstances" in which a plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Here, plaintiffs only mentioned the website (First Amd. Compl. ¶ 39). Our appeals court has applied the incorporation by reference doctrine to consider the contents of a website where the defendant filed a CD-ROM containing a digital replica of the relevant portions of the website in question. *Knievel v. ESPN*, 393 F.3d 1068, 1076–1077 (9th Cir. 2005). There, the plaintiffs had explicitly referenced the website in question and attached a picture from one page of the website as the basis for their defamation suit. *Ibid.* The additional web contents were provided by the defense to put the picture in context and were essential to the underlying defamation claim. *Ibid.* No party questioned the authenticity of the website. *Ibid.* Here, plaintiffs allege that the website is "Hershey's website" (First Amd. Compl. ¶ 39). However, plaintiffs state that the website is www.smartlabel.hersheys.com. Smart Label is a trade organization website where food manufacturers can upload ingredient information. It does not appear to be a Hershey owned-and-operated website. Hershey questions the authenticity of the information on the website, stating that the Smart Label website's statement is not product-specific and refers to use as a flavor enhancer, not an artificial flavor. Plaintiffs' reliance on the website in their argument does not rise to one of those "rare circumstances" envisioned by our court of appeals.

The parties' requests for judicial notice is **DENIED**.

## CONCLUSION

For the reasons stated, Hershey's motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. Regarding Hershey's motion to dismiss under FRCP 12(b)(6), the motion to dismiss is to be treated as one for summary judgment under Rule 12(d). In turn, under Rule 56(d), which authorizes a court to allow time for discovery during a motion for summary judgment when facts

14

are unavailable to the nonmovant, parties must be given reasonable opportunity to present all material pertinent to that motion. Immediate discovery into the issue regarding purpose of use of malic acid in the gelled candy is now allowed and supplements on this motion will be filed by **NOON ON APRIL 10, 2019.** On all other claims, by **MARCH 14, 2019**, plaintiffs may seek leave to amend the dismissed claims by a motion noticed on the normal 35-day calendar. Plaintiffs must plead their best case. Their motion should affirmatively demonstrate how the proposed amended complaint corrects the deficiencies identified in this order, as well as any other deficiencies raised in the Hershey's motion but not addressed herein. The motion should be accompanied by a redlined copy of the amended complaint.

**IT IS SO ORDERED.**

Dated: February 25, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE