**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
***Attorneys for Plaintiffs and the Proposed Class***

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOWARD CLARK, TODD HALL, ANGELA PIRRONE, individually, on behalf of all others similarly situated, and the general public,<br><br>                    Plaintiffs,<br><br>        v.<br><br>THE HERSHEY COMPANY, a Delaware corporation,<br><br>                    Defendant. | Case No. 3:18-cv-06113-WHA<br><br>CLASS ACTION<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT THE HERSHEY COMPANY'S MOTION FOR SUMMARY JUDGMENT**<br><br>Judge:  Hon. William Alsup<br><br>**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED** |

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.   LEGAL STANDARD .......................................................................................... 3

III.   ARGUMENT ...................................................................................................... 3

A.   Hershey Concedes that It Uses Artificial Malic Acid in the Brookside Products............ 3

B.   There is a Genuine Dispute as to Whether the Artificial Malic Acid Acts as a Flavoring
Agent in the Brookside Products ......................................................................... 5

1.   *Lauren Davis's Explanation of the Function of Malic Acid in the Products is
Contradicted by a Scientific Article that She Relies Upon* ................................... 5

2.   *Plaintiffs' Experts Opine that Malic Acid is Used as a Flavoring Agent in the
Products* ................................................................................................ 6

3.   *Hershey's Own Internal Documents Discuss the Flavor Profile of Malic Acid* ......... 9

4.   *Hershey's Expert Concedes that Malic Acid May Act as a Flavor* ........................ 10

C.   The Named Plaintiffs Have Standing to Pursue this Case ........................................ 12

1.   *Plaintiff Angela Pirrone Satisfies the Article III Standing Requirement* ..............12

2.   *Plaintiff Todd Hall Satisfies the Article III Standing Requirement* ...................... 13

3.   *Plaintiff Howard Clark Satisfies the Article III Standing Requirement* .................. 13

D.   Alternatively, the Court Should Defer Ruling on Hershey's Summary Judgment Motion
Until After Further Discovery ............................................................................. 14

IV.   CONCLUSION .................................................................................................. 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Family Life Assur. Co. of Columbus v. Biles*,
    714 F.3d 887 (5th Cir. 2013) ............................................................................... 15

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................... 3, 15

*Burlington N. Santa Fe R. Co. v. The Assiniboine & Sioux Tribes of the Fort Peck Reservation*,
    323 F.3d 767 (9th Cir. 2003) ............................................................................... 15

*Corns v. Laborers Int'l Union of N. Am.*,
    709 F.3d 901 (9th Cir. 2013) ................................................................................. 3

*Doe v. Abington Friends Sch.*,
    480 F.3d 252 (3d Cir. 2007) ............................................................................... 15

*Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*,
    525 F.3d 822 (9th Cir. 2008) ............................................................................... 15

*Freeman v. ABC Legal Servs. Inc.*,
    827 F. Supp. 2d 1065 (N.D. Cal. 2011) .............................................................. 15

*Furnace v. Sullivan*,
    705 F.3d 1021 (9th Cir. 2013) ............................................................................... 3

*Hilsley v. Ocean Spray Cranberries, Inc.*,
    2018 WL 5617701 (S.D. Cal. Oct. 30, 2018) ...................................... 2, 9, 10, 11

*LaLonde v. Cnty. of Riverside*,
    204 F.3d 947 (9th Cir. 2000) ................................................................................. 3

*Metabolife Int'l, Inc. v. Wornick*,
    264 F.3d 832 (9th Cir. 2001) ............................................................................... 15

*Soremekun v. Thrifty Payless, Inc.*,
    509 F.3d 978 (9th Cir. 2007) ................................................................................. 3

*St. Surin v. Virgin Islands Daily News, Inc.*,
    21 F.3d 1309 (3d Cir. 1994) ............................................................................... 15

ii

*U.S. ex.rel. Bernard v. Casino Magic Corp.*,

    293 F.3d 419 (8th Cir. 2002) ................................................................................ 15

**Rules**

Fed. R. Civ. P. 30(b)(6) ........................................................................................ 4

Fed. R. Civ. P. 56(d) ................................................................................... passim

**Treatises**

10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure:

    Civil 3d § 2740 (1998) ..................................................................................... 15

**Regulations**

21 C.F.R. § 101.22(a) .......................................................................................... 11

21 C.F.R. § 184.1069 ........................................................................................... 11

21 C.F.R. § 184.1069(a) ........................................................................................ 3

21 C.F.R. § 184.1069(c) ........................................................................................ 3

1    Pursuant to the Court's Order Regarding Motion to Dismiss and Convert Motion to
2    Dismiss into Motion for Summary Judgment dated February 25, 2019 (Dkt. No. 44) ("Order"),
3    Plaintiffs Howard Clark, Todd Hall, and Angela Pirrone ("Plaintiffs") respectfully submit this
4    Supplemental Brief in Opposition to Defendant The Hershey Company's ("Defendant" or
5    "Hershey") Motion for Summary Judgment.  For the reasons set forth below, Hershey's Motion
6    for Summary Judgment should be denied in its entirety. Alternatively, the Court should defer
7    ruling on the motion until further discovery pursuant to Rule 56(d).

8                                    **I.        INTRODUCTION**

9    This is a consumer protection action concerning Hershey's Brookside Dark Chocolate
10   Products. (*See generally* Second Amended Complaint ("SAC"), Dkt. No. 73). Plaintiffs allege
11   that the "No Artificial Flavors" labeling statement on the Brookside Products is false and
12   misleading because Hershey actually uses an artificial flavoring ingredient in the Products called
13   DL-malic acid. (SAC ¶¶ 28-31). In its Order, this Court noted that "Hershey argues that it
14   properly disclosed malic acid on its nutrition list of ingredients because Hershey used malic acid
15   for an FDA-approved function, pH balancing, and not as a flavor or flavor enhancer" and
16   "[g]iven the importance of this factual dispute and because 'matters outside the pleading are
17   presented to and not excluded by the court,' the motion to dismiss must be treated as one for
18   summary judgment under Rule 12(d)." (Dkt. No. 44 at 5:24-26). This Court ordered immediate
19   discovery into these issues and also ordered supplemental briefing to be filed. (Dkt. No. 44 at
20   5:1-2).

21   Plaintiffs have now had an opportunity to take some discovery into this disputed factual
22   issue. The record in this action clearly shows that Hershey uses the artificial form of malic acid
23   in its Brookside Products.  This is confirmed by laboratory testing that was performed by a
24   reputable food laboratory, two independent expert witnesses in the field of food sciences who
25   were retained by Plaintiffs, and by Hershey's own malic acid ingredient suppliers.  Importantly,
26   in response to Plaintiffs' Requests for Admission, Hershey admits that it uses d-l malic acid in
27   each of the Products that are at issue.  There is no genuine dispute that Hershey uses the artificial
28   form of malic acid in its Brookside Dark Chocolate Products.

1

*Clark v. The Hershey Company,* Case No. 3:18-cv-06113-WHA
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT THE HERSHEY COMPANY'S
MOTION FOR SUMMARY JUDGMENT

The factual dispute thus turns on whether Hershey uses artificial malic acid as a flavoring ingredient.   Both of Plaintiffs' expert witnesses opine that artificial malic acid is used for flavoring purposes in the Brookside Products.   This expert testimony alone is enough to defeat summary judgment. *See Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17CV2335-GPC(MDD), 2018 WL 5617701, at *6 (S.D. Cal. Oct. 30, 2018) ("Based on the competing declarations, the Court concludes that there is a material issue of disputed fact whether malic acid and fumaric acid function as flavors in Defendants' juice products. Thus, the Court Denies Defendants' motion for summary judgment."). However, in addition to expert testimony, Hershey's own internal documents ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████. This evidence establishes that there is a genuine dispute as to whether malic acid functions as a flavoring ingredient in the Products and Hershey's Motion for Summary Judgment should be denied.

Hershey also previously argued that "because plaintiffs appear to have known about the products' supposed mislabeling prior to purchasing them, they cannot have suffered any justiciable injury for purposes of Article III standing and their claims should be dismissed." (Dkt. No. 44 at 4:13-15). The Court held that "[t]hese questions are more appropriate for a summary judgment motion, after discovery on the way in which plaintiffs came to counsel." (Dkt. No. 44 at 4:22-44).   Hershey has now had the opportunity to take the depositions of all three of the named Plaintiffs in this action.  The deposition testimony of each of the Plaintiffs establishes that they were not aware that the Brookside Products contained an artificial flavoring ingredient prior to purchasing the Products.   Each of the Plaintiffs were informed of laboratory testing confirming the presence of artificial malic acid in the Products after they had already purchased the Products. Once informed of this testing, Plaintiffs discovered that they had been duped, ceased purchasing the Products, and commenced this class action lawsuit to seek redress on behalf of themselves and similarly situated consumers.   Plaintiffs' deposition testimony also establishes that each of the Plaintiffs relied on the product labels and the "No Artificial Flavors" labeling statement and paid more for the Products believing that they were premium products.

2

*Clark v. The Hershey Company,* Case No. 3:18-cv-06113-WHA
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT THE HERSHEY COMPANY'S
MOTION FOR SUMMARY JUDGMENT

## II.      LEGAL STANDARD

Summary judgment is appropriate only "when, viewing the evidence in the light most favorable to the non-moving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Corns v. Laborers Int'l Union of N. Am.*, 709 F.3d 901, 907 (9th Cir. 2013). In considering whether summary judgment should be entered, courts "do[] not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court must determine whether the record "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. "If conflicting inferences may be drawn from the facts, the case must go to the jury." *LaLonde v. Cnty. of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000). In other words, summary judgment is inappropriate if "as to any given material fact, evidence produced by the moving party . . . conflicts with evidence produced by the nonmoving party." *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013).

## III.      ARGUMENT

### A.   Hershey Concedes that It Uses Artificial Malic Acid in the Brookside Products

As federal food labeling regulations explain, there are two forms of malic acid. *See* 21 C.F.R. § 184.1069(a). "L-malic acid" occurs naturally in various foods. *Id.* However, "Racemic DL-malic acid does not occur naturally." *Id.* DL-malic acid is instead "made commercially by hydration of fumaric acid or maleic acid." *Id.* The two forms of malic acid are used as a flavor enhancer, a flavoring agent and adjuvant, and as a pH control agent. *See* 21 C.F.R. § 184.1069(c). Flavoring agents are defined as "[s]ubstances added to impart or help impart a taste or aroma in food." 21 C.F.R. § 170.3(o)(12).

On August 27, 2018, prior to filing this action, Plaintiffs' counsel had laboratory testing performed on a bag of the Brookside Dark Chocolate Acai & Blueberry Flavors Product by Krueger Food Laboratories, Inc. (*See* Declaration of Michael T. Houchin in Support of Plaintiffs' Supplemental Brief ("Houchin Decl."), ¶ 2 & Ex. 1). This product tested positive for the

3

*Clark v. The Hershey Company,* Case No. 3:18-cv-06113-WHA
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT THE HERSHEY COMPANY'S
MOTION FOR SUMMARY JUDGMENT

1    presence of artificial d-l malic acid. (Houchin Decl., ¶ 2 & Ex. 1).  Additional testing of various

2    Brookside Products was also performed in March of 2019. (Houchin Decl., ¶ 2 & Ex. 1).  Each

3    one of the Brookside Products tested positive for the presence of artificial d-l malic acid.

4    (Houchin Decl., ¶ 2 & Ex. 1).

5         During discovery, Hershey produced various documents that it received from its

6    ingredient suppliers. During a Rule 30(b)(6) deposition of Hershey's senior research scientist,

7    Lauren Davis, Plaintiffs discovered that Hershey currently has ████████████████████████

8    ███████████████████████████████████████████████████. (Houchin Decl., ¶ 3

9    & Ex. 2 [Davis Dep. Tr. 30:1-4]). On October 1, 2013, ████████████████████████

10   ████████████████████████████████████████████████████████████████████

11   ███████████████████ (Houchin Decl., ¶ 4 & Ex. 3). ████████████████████████

12   ████████████████████████████████████████████████████████████████████

13   ██████████████████████████████ (Houchin Decl., ¶ 4 & Ex. 3). ████████████

14   ████████████████████████████████████ (Houchin Decl., ¶ 4 & Ex. 3).  In

15   another letter ████████████████████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████

17   ███████████████████████████████ (Houchin Decl., ¶ 4 & Ex. 3). ████████████

18   ████████████████████████████████████ (Houchin Decl., ¶ 4 & Ex. 3). ████████

19   ███████████████ confirm Plaintiffs' allegations that Hershey uses artificial DL-malic

20   acid in the Brookside Products that is derived from petrochemicals. (SAC ¶ 35). Hershey

21   documents also show that ██████████████████████████████████████████. (Houchin

22   Decl., ¶ 5 & Ex. 4).

23        Not to mention, in response to Plaintiffs' Requests for Admission, Hershey has admitted

24   that each of the Brookside Products "contain d-l malic acid" and Hershey has conceded that "all

25   d-l malic acid is artificial." (Houchin Decl., ¶ 6 & Ex. 5). Therefore, there is no genuine dispute

26   that Hershey uses artificial malic acid in the Brookside Products and Hershey's Motion for

27   Summary Judgment should be denied with respect to this issue.

28

**B.  There is a Genuine Dispute as to Whether the Artificial Malic Acid Acts as a Flavoring Agent in the Brookside Products**

    1.  *Lauren Davis's Explanation of the Function of Malic Acid in the Products is Contradicted by a Scientific Article that She Relies Upon*

In support of its Motion to Dismiss the First Amended Complaint, Hershey submitted a declaration from its food scientist, Lauren Davis. (Dkt. No. 14-2).[1] Ms. Davis contends that Hershey's "use of malic acid in the Products is for a specific functional purpose, namely, to lower the Products' pH level." (Houchin Decl., ¶ 7 & Ex. 6 [Davis Decl., ¶ 4]). Ms. Davis contends that "[t]he pH lowering properties of malic acid is well known and understood in the food science community and related literature." (Houchin Decl., ¶ 7 & Ex. 6 [Davis Decl., ¶ 6]). In support of this contention, Ms. Davis attached as Exhibit A to her declaration what she describes as "a scientific article well known in my profession discussing the functional use of malic acid in products like ours." (Houchin Decl., ¶ 7 & Ex. 6 [Davis Decl., ¶ 6]). However, during her deposition, Ms. Davis testified ███████████████████████████. (Houchin Decl., ¶ 3 & Ex. 2 [Davis Dep. Tr. 60:5-61:14]). The article attached as Exhibit A to Ms. Davis' Declaration is an article by Burey, et al. titled *Confectionery Gels: A Review On Formulation, Rheological And Structural Aspects.* (Houchin Decl., ¶ 7 & Ex. 6 [Davis Decl. at Ex. A]). The article notes the following:

> ***Food acids are added to confectionery gels primarily to give a tart tangy taste, and in the case of pectin, to aid gel formation***. The choice of food acid is related to the desirable level of sharpness and the likely effect of the acid on rather raw materials present. Common organic food acids used are citric acid, malic acid, tartaric acid, adipic acid and fumaric acid. Lactic acid may also be used, particularly when gelatin is added to fermented milk. The most commonly used acid is citric acid as it causes the least degradation in other food materials used in food products, and it is the food acid being utilized in the gels being studied. ***The other acids are used in foods to achieve a different flavour profile to citric acid***.

---

[1] The Declaration of Lauren Davis is attached to a letter that was sent to Plaintiffs' counsel by Hershey's former counsel. (Dkt. No. 14-2). The declaration begins on page 13 of the ECF numbered pages.  For this Court's convenience, Ms. Davis' declaration has also been attached as Exhibit 6 to the concurrently filed Houchin Declaration. (Houchin Decl., ¶ 7 & Ex. 6).

(Houchin Decl., ¶ 7 & Ex. 6 [Davis Decl. at Ex. A p. 189]) (emphasis added).

During her deposition, Ms. Davis testified ████████████████████████

████████████████████████████████████████. (Houchin Decl., ¶ 3 & Ex. 2

[Davis Dep. Tr. 44:9-16]).[2] Ms. Davis also testified ████████████████

(Houchin Decl., ¶ 3 & Ex. 2 [Davis Dep. Tr. 46:10-14]). Therefore, according to the article titled

*Confectionery Gels: A Review On Formulation, Rheological And Structural Aspects,* which Ms.

Davis relied upon, malic acid would be used "to achieve a different flavour profile to citric acid."

(Houchin Decl., ¶ 7 & Ex. 6 [Davis Decl. at Ex. A p. 189]). The use of both citric acid and malic

acid in the Brookside Products indicates that citric acid would be the primary pH control

ingredient whereas malic acid would be used primarily as a flavoring agent in the Products. This

concept is further explained by Plaintiffs' expert witnesses and is discussed in the section below.

   2. <u>*Plaintiffs' Experts Opine that Malic Acid is Used as a Flavoring Agent in the*</u>
   <u>*Products*</u>

Plaintiffs have retained two experts in food sciences, Dr. Laszlo P. Somogyi and Dr.

Henry Chin, who have submitted expert reports and who opine that malic acid is used as a

flavoring agent in the Brookside Products. (Houchin Decl., ¶ 8 & Ex. 7 [Somogyi Decl.]; ¶ 9 &

Ex. 8 [Chin Decl.]). Dr. Somogyi is a Certified Food Scientist, an Elected Fellow of the Institute

of Food Technologists (IFT), and past chairman of Northern California Section of IFT. (Houchin

Decl., ¶ 8 & Ex. 7 [Somogyi Decl., ¶ 8]). Dr. Somogyi has conducted food technology research

and food product development at the University of California at Davis, held research positions at

several food companies, and performed consultation projects at several food processing

companies in the U.S., Europe, Asia, and the Middle East. (Houchin Decl., ¶ 8 & Ex. 7

[Somogyi Decl., ¶ 10]). Dr. Somogyi also conducted food processing research and completed

various assignments as a consultant to the Food and Drug Administration (FDA), the

Environmental Protection Agency (EPA) and over 50 leading food companies. (Houchin Decl., ¶

8 & Ex. 7 [Somogyi Decl., ¶ 11]).  Dr. Somogyi is a well-qualified expert who has been retained

---

[2] ████████████████████████████████████████████████████

████████ (Houchin Decl., ¶ 3 & Ex. 2 [Davis Dep. Tr. 68:20-25]).

to offer opinions on the function and effect of malic acid in the Products. (Houchin Decl., ¶ 8 & Ex. 7 [Somogyi Decl., ¶¶ 11-17 & Ex. A]).

In his report, Dr. Somogyi explains the differences between natural L-malic acid and artificial DL-malic acid. (Houchin Decl., ¶ 8 & Ex. 7 [Somogyi Decl., ¶¶ 11-32]). Dr. Somogyi notes that Flavors and Extract Manufactures Association ("FEMA") classifies malic acid as a flavoring ingredient. (Houchin Decl., ¶ 8 & Ex. 7 [Somogyi Decl., ¶¶ 33-34]). Dr. Somogyi then describes the functions of malic acid in confectionary products like the Brookside Products. (Houchin Decl., ¶ 8 & Ex. 7 [Somogyi Decl., ¶¶ 35-41]). Dr. Somogyi notes that "the most commonly used acid in pectin gel formulations is citric acid." (Houchin Decl., ¶ 8 & Ex. 7 [Somogyi Decl., ¶ 38]). Dr. Somogyi's conclusion is support by the Burey article that is attached to the Declaration of Lauren Davis. (Houchin Decl., ¶ 8 & Ex. 7 [Somogyi Decl., ¶ 44]). Dr. Somogyi provides an expert opinion based on purchasing Brookside Dark Chocolate products at local stores, followed by visual and organoleptic tasting of samples, reviewing label declarations, and evaluating laboratory testing reports for L-, and D- malic acids contents. (Houchin Decl., ¶ 8 & Ex. 7 [Somogyi Decl., ¶ 47]).

Dr. Somogyi opines that citric acid is added to adjust the pH essential for the formation of a desirable pectin gel, as with the Brookside Products. (Houchin Decl., ¶ 8 & Ex. 7 [Somogyi Decl., ¶ 57]). ████████████████████████████████████████ ██████████████████████ (Houchin Decl., ¶ 3 & Ex. 2 [Davis Dep. Tr. 46:10-14]). Dr. Somogyi opines that the addition of "malic acid serves as an acidifier and as a flavoring ingredient" and that based on this information, Brookside Dark chocolate labels should declare "Artificially Flavored" on the label. (Houchin Decl., ¶ 8 & Ex. 7 [Somogyi Decl., ¶¶ 57-58]). Based on Dr. Somogyi's review of the ingredients in the products, the laboratory test results, and organoleptic tasting of samples, Dr. Somogyi concludes that "the dl-malic acid added to the Brookside Dark Chocolate products functions as an acidulant and a flavoring agent." (Houchin Decl., ¶ 8 & Ex. 7 [Somogyi Decl., ¶ 65]).

Plaintiffs' other expert, Dr. Henry Chin, also reaches a similar conclusion. (Houchin Decl., ¶ 9 & Ex. 8 [Chin Decl.]). Dr. Chin has worked in the food industry for more than forty

7

*Clark v. The Hershey Company,* Case No. 3:18-cv-06113-WHA
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT THE HERSHEY COMPANY'S
MOTION FOR SUMMARY JUDGMENT

1   years and has published and made many presentations on food safety and on managing food

2   safety risks in both national and international settings. (Houchin Decl., ¶ 9 & Ex. 8 [Chin Decl.,

3   ¶¶ 8-9]). Dr. Chin is a well-qualified expert who has been retained to offer an expert opinion

4   relating to the function and effect of malic acid in the Brookside Products. (Houchin Decl., ¶ 9 &

5   Ex. 8 [Chin Decl., ¶¶ 7-11]).

6        Dr. Chin has reviewed the Declaration of Lauren Davis and states that "it does appear

7   that one of major purposes for the use of malic acid is to facilitate the setting of the gel, in my

8   opinion it is also likely that malic acid was chosen as the acidulant because of its flavor

9   properties and ability to enhance the flavor of the product, and therefore the claim 'No artificial

10  flavor' would be considered misleading." (Houchin Decl., ¶ 9 & Ex. 8 [Chin Decl., ¶ 14]). Dr.

11  Chin goes on to describe the definition of a "flavor" and notes that malic acid meets this

12  definition. (Houchin Decl., ¶ 9 & Ex. 8 [Chin Decl., ¶¶ 16-21]). Dr. Chin also cites to scientific

13  literature noting that acidulants, like malic acid, may have more than one functional use as an

14  ingredient and that one of the best-known functions is a flavoring adjunct. (Houchin Decl., ¶ 9 &

15  Ex. 8 [Chin Decl., ¶¶ 20-21]). Significantly, Dr. Chin opines that the use of malic acid, compared

16  to another acid like citric acid, suggests that there were considerations of using malic acid as a

17  flavor. (Houchin Decl., ¶ 9 & Ex. 8 [Chin Decl., ¶¶ 22-25]). This opinion is supported by the

18  Burey article, which was relied upon by Ms. Davis, as well as a scientific paper by Bartek.

19  (Houchin Decl., ¶ 9 & Ex. 8 [Chin Decl., ¶¶ 22-23]). Bartek noted that "[m]alic acid appeared to

20  be particularly good choice as an acidulant to optimize the flavor of certain fruit products."

21  (Houchin Decl., ¶ 9 & Ex. 8 [Chin Decl., ¶ 23]). Again, ███████████████████████████

22  ████████████████████████. (Houchin Decl., ¶ 3 & Ex. 2 [Davis Dep. Tr. 30:1-4]; Houchin

23  Decl. ¶ 5 & Ex. 4). Dr. Chin further opines that "regardless of intent, it is clear that the choice of

24  acidulant, in this case malic acid, would impact the perceived flavor of the Brookside Products."

25  (Houchin Decl., ¶ 9 & Ex. 8 [Chin Decl., ¶ 25]).

26       Because Plaintiffs have submitted competent expert testimony relating to the function of

27  malic acid as a flavoring agent in the Brookside Products, summary judgment should be denied.

28  This case is akin to *Hilsley v. Ocean Spray Cranberries, Inc.* where the Defendants there filed a

Motion for Summary Judgment arguing that malic acid in Ocean Spray beverage products functions as a pH control agent rather than a flavoring ingredient. *Hilsley*, 2018 WL 5617701, at *4. In *Hilsley*, the plaintiff also submitted an expert declaration by Dr. Somogyi opining that malic acid improves the flavor profile of the products. *Id.* at *5. The *Hilsley* court noted that "Dr. Somogyi is a food scientist with extensive experience in food technology research and food product development." *Id.* In *Hilsley*, "Dr. Somogyi conclude[d] that dl-malic acid is added to the Cran-Apple juice drink and other products to function as a flavoring agent." *Id.* at *5. "Based on the competing declarations, the Court conclude[d] that there is a material issue of disputed fact whether malic acid and fumaric acid function as flavors in Defendants' juice products." *Id.* at *6. The same is true here. Although Hershey offers a declaration from its food scientist, Plaintiffs offer competing declarations from their food scientists opining that malic acid is used as a flavoring agent and therefore summary judgment should be denied.

   3.   *Hershey's Own Internal Documents Discuss the Flavor Profile of Malic Acid*

Hershey's own internal documents also discuss the ████████████████████ ███████████████████████████████████████████████. For example, an internal Hershey document relating to ████████████████████████████ ████████████████████████████████████████████████ (Houchin Decl., ¶ 10 & Ex. 9). During her deposition, ████████████████ ███████████. (Houchin Decl., ¶ 3 & Ex. 2 [Davis Dep. Tr. at 80:6-83:23]). Ms. Davis testified that ███████████████████████████████████████████████████████████ (Houchin Decl., ¶ 3 & Ex. 2 [Davis Dep. Tr. at 80:6-83:23]). ████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████ (Houchin Decl., ¶ 3 & Ex. 2 [Davis Dep. Tr. at 83:19-23]).

   Another internal Hershey document states ███████████████████ ████████████████████████████████████████████████████████ (Houchin Decl., ¶ 11 & Ex. 10) (emphasis added).

9

██████████████████████████████████████████████████████████████████████

████████████████ (Houchin Decl., ¶ 3 & Ex. 2 [Davis Dep. Tr. at 86:16-88:22]). Ms. Davis testified

that ███████████████████████████████████████████. (Houchin Decl.,

¶ 3 & Ex. 2 [Davis Dep. Tr. at 87:8-11]). She also ██████████████████████

████████████████████████████████████████ (Houchin Decl., ¶ 3 & Ex. 2 [Davis

Dep. Tr. at 87:23-88:3]).

Lastly, an internal Hershey document describes ███████████████████████

████████████████████████████████████. (Houchin Decl., ¶ 12 & Ex. 11).

Ms. Davis testified that ██████████████████████████████

████████████████████ (Houchin Decl., ¶ 3 & Ex. 2 [Davis Dep. Tr. at 95:16-98:5]). The

document goes on to state █████████████████████████████████████████

████████████████████████ (Houchin Decl., ¶ 12 & Ex. 11). ████████████████

██████████████████████████████████████████████████████████████████

████████████ (Houchin Decl., ¶ 3 & Ex. 2 [Davis Dep. Tr. at 98:25-99:7]). Nonetheless, Ms.

Davis ██████████████████████████████████████████████████████████████

████████████████████████████. (Houchin Decl., ¶ 3 & Ex. 2 [Davis Dep. Tr. at 99:9-

99:25]).

Because Hershey's own internal documents clearly discuss ████████████████████

████, a genuine dispute exists as to whether malic acid is used as a flavoring ingredient in the

Products. *See Hilsley*, 2018 WL 5617701, at *6 ("the use of 'taste' and 'flavor profile' to

describe l-malic acid in Ocean Spray's own documents challenges Defendants' assertion that

taste and flavor are distinct.").

### 4. *Hershey's Expert Concedes that Malic Acid May Act as a Flavor*

Hershey has also submitted an expert report from a food scientist, Dr. Louise Wicker.

(Houchin Decl., ¶ 13 & Ex. 12 [Wicker Decl.]). In her report, Dr. Wicker notes that an organic

acid [such as malic acid] used as a food additive will have a sour or tart taste. (Houchin Decl., ¶

13 & Ex. 12 [Wicker Decl., ¶ 22]). Dr. Wicker explains that she does not consider an "acid used

as a pH regulator to be a 'flavor,' even though it may ultimately impact the overall flavor of the

10

*Clark v. The Hershey Company,* Case No. 3:18-cv-06113-WHA
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT THE HERSHEY COMPANY'S
MOTION FOR SUMMARY JUDGMENT

product to which it is added." (Houchin Decl., ¶ 13 & Ex. 12 [Wicker Decl., ¶ 22]). However, this position finds no support in federal regulations concerning malic acid. The regulations provide that "[t]he [malic acid] ingredients are used as a flavor enhancer as defined in § 170.3(o)(11) of this chapter, flavoring agent and adjuvant as defined in § 170.3(o)(12) of this chapter, **and** pH control agent as defined in § 170.3(o)(23) of this chapter." 21 C.F.R. § 184.1069 (emphasis added); *Hilsley*, 2018 WL 5617701, at *3 (analyzing regulations relating to malic acid). An artificial flavor is defined by the federal regulations "as any substance, *the function of which is to impart flavor*, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R. § 101.22(a) (emphasis added). Here, the evidence establishes that there is a genuine dispute as to whether the function of malic acid in the Brookside products is to impart flavor regardless of whether malic acid may also act as a pH control agent.

Plaintiffs' expert, Dr. Henry Chin, has also submitted a rebuttal declaration in response to Dr. Wicker's expert declaration. (Houchin Decl., ¶ 14 & Ex. 13 [Chin Rebuttal Decl.]). Dr. Chin explains that "it is well known that malic acid can both be an acidulant and a flavor." (Houchin Decl., ¶ 14 & Ex. 13 [Chin Rebuttal Decl., ¶ 6]). Dr. Chin opines that "if the only function of malic acid was to lower the pH, another acid such as citric acid might have been a better choice." (Houchin Decl., ¶ 14 & Ex. 13 [Chin Rebuttal Decl., ¶ 7]). Dr. Chin explains that citric acid and malic acid produce a nearly identical pH and "if the only function of the malic acid was to lower pH and initiate the pectin mixture to gel, citric could easily be substituted for malic acid" (Houchin Decl., ¶ 14 & Ex. 13 [Chin Rebuttal Decl., ¶ 8]). Dr. Chin notes that citric acid is about 2/3 the cost of malic acid and there would be an economic advantage to using citric acid instead. (Houchin Decl., ¶ 14 & Ex. 13 [Chin Rebuttal Decl., ¶ 9]). However, Hershey's consideration to use malic acid instead of citric acid likely "included the fact that malic acid produced a more desirable flavor in the fruit flavored centers compared to citric acid." (Houchin Decl., ¶ 14 & Ex. 13 [Chin Rebuttal Decl., ¶ 8]). Accordingly, a genuine dispute exists as to whether malic acid functions as a flavoring agent and Hershey's Motion for Summary Judgment should be denied.

**C.    The Named Plaintiffs Have Standing to Pursue this Case**

Hershey also argues that "because plaintiffs appear to have known about the products' supposed mislabeling prior to purchasing them, they cannot have suffered any justiciable injury for purposes of Article III standing and their claims should be dismissed." (Dkt. No. 44 at 4:13-15). The record in this action is to the contrary. Plaintiffs' deposition testimony establishes that each of the Plaintiffs relied on the product labels and the "No Artificial Flavors" labeling statement and paid more for the Products, believing that they were premium products free from artificial flavors.

### 1.    *Plaintiff Angela Pirrone Satisfies the Article III Standing Requirement*

Plaintiff Angela Pirrone first purchased the Brookside® Dark Chocolate - Acai & Blueberry Product in 2010 or 2011 in Palm Beach Gardens, Florida Publix. (Houchin Decl., ¶ 15 & Ex. 14 [Pirrone Dep. Tr. 20:11 – 21:5]). Thereafter, Plaintiff Pirrone purchased the Products about once every three months until 2018. (Houchin Decl., ¶ 15 & Ex. 14 [Pirrone Dep. 25:19 – 26:8]). Plaintiff Pirrone spent between $4.00 and $6.00 for the Products. (Houchin Decl., ¶ 15 & Ex. 14 [Pirrone Dep. Tr. 21:6-14; 26:9-19]). During her deposition, Plaintiff Pirrone testified that she believed that the Products contained no artificial flavors and therefore paid a price premium for them. (Houchin Decl., ¶ 15 & Ex. 14 [Pirrone Dep. Tr. 66:15- 67:7]). It was not until she learned of laboratory test results confirming the presence of artificial flavoring that she discovered that the Products were misleadingly labeled. (Houchin Decl., ¶ 15 & Ex. 14 [Pirrone Dep. Tr. 79:12 -80:4; 81:19 – 82:1; 120:8-23]).

Plaintiff Pirrone testified that as a consumer, she was misled by The Hershey Company and paid a price premium for a Product she believed was a healthier option for herself and her family. (Houchin Decl., ¶ 15 & Ex. 14 [Pirrone Dep. Tr. 57:7-17; 122:1-9; *see also* 100:5-19 (A: Hershey is an American brand. As a consumer, as a mother, it's associated as being a fun brand. And there's a level of trust that goes with the history. So if Hershey's is labeling a fruit, a chocolate covered fruit and letting me know that it's probably healthier for me to serve this to my child as a treat than an M&M or, I don't know, a Reese's Peanut Butter Cup, it's just – it's misleading, I guess, the fact that it says no artificial [flavors]. And yet, a scientist identified

12

*Clark v. The Hershey Company,* Case No. 3:18-cv-06113-WHA
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT THE HERSHEY COMPANY'S
MOTION FOR SUMMARY JUDGMENT

something that is making this claim false.)]. Plaintiff Pirrone testified that she would not have purchased the Products, or would have paid less for them, had she known that the Products contained artificial flavoring ingredients. (Houchin Decl., ¶ 15 & Ex. 14 [Pirrone Dep. Tr. 98:19 –99:13; 103:16–104:21]). Because she lost money as a result of Defendant's unlawful advertising scheme, Plaintiff Pirrone has Article III standing.

2.   *Plaintiff Todd Hall Satisfies the Article III Standing Requirement*

Plaintiff Todd Hall first purchased the Brookside® Dark Chocolate - Pomegranate Product in April 2014. (Houchin Decl., ¶ 16 & Ex. 15 [Hall Dep. Tr. 30:6-12; 31:2-4]). Thereafter, Plaintiff Hall purchased the Products approximately once a month at the Target, Albertsons, and/or CVS stores in Rancho Cucamonga and San Dimas. (Houchin Decl., ¶ 16 & Ex. 15 [Hall Dep. 31:5-14; 33:22 – 32:2; 36:3-18]). Plaintiff Hall spent between $4.00 and $5.00 for the Products. (Houchin Decl., ¶ 16 & Ex. 15 [Hall Dep. Tr. 33:19-23]).

During his deposition, Plaintiff Hall testified that he believed the Products contained no artificial flavors and it was not until he learned that the Products tested positive for dl-malic acid that he discovered the presence of artificial flavoring in the Products. (Houchin Decl., ¶ 16 & Ex. 15 [Hall Dep. Tr. 32:13 – 33:11; 42:15 – 43:3; 63:24 – 64:1; 64:14-17; 68:20 – 69:15]). Plaintiff Hall testified that he was "misled based on the packaging" and "paid a premium for something I never received." (Houchin Decl., ¶ 16 & Ex. 15 [Hall Dep. Tr. 22:15-24; 23:10-20 (Q: And what do you feel you were misled by on the packaging on those products? A: Well, on the top flap … it's listed as no artificial ingredients. I come to find out there are some artificial ingredients. And when you pay a premium for something that you think is healthy and it's not, you have a tendency to feel misled.)]. Plaintiff Hall testified that he would not have purchased the Products, or would have paid less for them had he known that the Products contained artificial flavoring ingredients. (Houchin Decl., ¶ 16 & Ex. 15 [Hall Dep. 91:22 – 93:19]). Because he lost money as a result of Defendant's unlawful advertising scheme, Plaintiff Hall has Article III standing.

3.   *Plaintiff Howard Clark Satisfies the Article III Standing Requirement*

Plaintiff Clark first purchased the Brookside® Dark Chocolate - Acai & Blueberry Product in April 2018 at a Safeway on Webster Street in San Francisco. (Houchin Decl., ¶ 17 &

Ex. 16 [Clark Dep. Tr. 19:3-12; 20:20 – 21:4; 36:7-15]). Plaintiff Clark spent approximately $4.79 on his purchase of the Product. (Houchin Decl., ¶ 17 & Ex. 16 [Clark Dep. Tr. 23:11-23]).

During his deposition, Plaintiff Clark testified that he first noticed the "no artificial flavoring" claim upon his purchase of the Product and relied on that claim when ultimately deciding to purchase the Product. (Houchin Decl., ¶ 17 & Ex. 16 [Clark Dep. Tr. 18:4-14; 29:2-16; 30:1-5; 68:19-22 (Q: It sounds like you did buy the product because it says 'no artificial flavors'; is that a fair characterization? A: Yes.)). Due to the "no artificial flavoring" promise on the Product label, Plaintiff Clark believed that the Product was a "nutritional, healthy choice" and a "premium chocolate" worth the price he paid. (Houchin Decl., ¶ 17 & Ex. 16 [Clark Dep. Tr. 30:11-24; 40:6-25; 42:25 – 43:5]). As Plaintiff Clark testified, "[t]he label read 'no artificial flavoring,' so I as a consumer just thought it was a natural – a more natural – a natural product." (Houchin Decl., ¶ 17 & Ex. 16 [Clark Dep. 27:16-25]). It was not until Plaintiff Clark spoke with his attorneys that he discovered that the Products were mislabeled and actually contained artificial flavors. (Houchin Decl., ¶ 17 & Ex. 16 [Clark Dep. Tr. 117:6-25]). Plaintiff Clark testified that he was "misled" and "duped" into purchasing the Product and would not have done so if he had known that it contained artificial flavors. (Houchin Decl., ¶ 17 & Ex. 16 [Clark Dep. 17:10-24; 88:23 – 89:5]). Because he lost money as a result of Defendant's unlawful advertising scheme, Plaintiff Clark has Article III standing.

**D.   Alternatively, the Court Should Defer Ruling on Hershey's Summary Judgment Motion Until After Further Discovery**

As set forth above, Plaintiffs have demonstrated that there is a genuine dispute as to whether malic acid functions as a flavoring ingredient in the Brookside Products. The Court should therefore deny Hershey's Motion for Summary Judgment in its entirety. In the alternative, should the Court choose, the Court may defer ruling on Hershey's Summary Judgment motion until after further discovery has been completed pursuant to Federal Rule of Civil Procedure 56(d).

Rule 56(d) provides a means to ensure that the Court has a full summary judgment record and responding parties have a fair opportunity to respond to a motion for summary judgment.

14

*Clark v. The Hershey Company,* Case No. 3:18-cv-06113-WHA
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT THE HERSHEY COMPANY'S
MOTION FOR SUMMARY JUDGMENT

Thus, Rule 56(d) relief is "broadly favored and should be liberally granted." *Am. Family Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013) (citations and quotation marks omitted); *see also U.S. ex.rel. Bernard v. Casino Magic Corp.*, 293 F.3d 419, 426 (8th Cir. 2002) (this rule "should be applied with a spirit of liberality.") (quoting 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 3d § 2740 (1998)).  Indeed, "[c]ourts are reluctant to deny Rule 56(d) requests…. [U]nless [the non-moving party] failed to exercise due diligence in conducting discovery, filed an untimely Rule 56(d) request, or failed to explain how additional facts would oppose summary judgment, the request is generally granted with liberality." *Freeman v. ABC Legal Servs. Inc.*, 827 F. Supp. 2d 1065, 1071 (N.D. Cal. 2011).

Rule 56(d) relief is typically granted "as a matter of course." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) (quoting *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1314 (3d Cir. 1994)); *accord Burlington N. Santa Fe R. Co. v. The Assiniboine & Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 773–74 (9th Cir. 2003).  Further, granting Rule 56(d) relief is required when "the nonmoving party has not had the opportunity to discover information that is essential to its opposition." *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (quoting *Anderson*, 477 U.S. at 250 n. 5). To establish the need for Rule 56(d) relief, "the requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). The attached Houchin Declaration satisfies these requirements.

The fact discovery cut-off in this case is not until December 6, 2019 and the expert disclosure deadline is also not until December 6, 2019. (*See* Scheduling Order, Dkt. No. 29). Plaintiffs intend to seek discovery from Hershey's malic acid ingredient suppliers both of whom can provide further evidence about the function and effect of the malic acid in the Products and whether malic acid functions as a flavoring ingredient. Houchin Decl., ¶ 19.  Plaintiffs also have not had the opportunity to depose other Hershey food scientists who may have further knowledge

15

*Clark v. The Hershey Company,* Case No. 3:18-cv-06113-WHA
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT THE HERSHEY COMPANY'S
MOTION FOR SUMMARY JUDGMENT

about the function and effect of malic acid in the Products. For example, a Hershey food scientist

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

(Houchin Decl., ¶ 11 & Ex. 10; Houchin Decl., ¶ 3 & Ex. 2 [Davis Dep. Tr. at 86:16-88:22]).

Plaintiffs intend to seek ██████████ deposition about this document and about his personal

knowledge as to whether Hershey uses malic acid as a flavoring ingredient in the Brookside

Products.  Houchin Decl., ¶ 20.   Lastly, Plaintiffs should be afforded an opportunity to take the

deposition of Hershey's expert witness, Dr. Wicker. Houchin Decl., ¶ 21.  Plaintiffs intend to

depose Dr. Wicker on her opinions about the use of malic acid as a flavoring ingredient and her

knowledge and understanding of the materials that are cited in her expert report. Houchin Decl.,

¶ 21.

Hershey has not met its burden of demonstrating material undisputed facts concerning the

function and effect of malic acid that would enable it to prevail at trial. Plaintiffs, in contrast,

have cited sufficiently probative evidence to establish that the material facts are in genuine

dispute. For these reasons, the Court should deny Hershey's Summary Judgment Motion in its

entirety as set forth above or, in the alternative, defer ruling on it until after further discovery.

### IV.      CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that Hershey's Motion for

Summary Judgment be denied in its entirety.   Alternatively, Plaintiffs request that the Court

defer ruling on the motion until Plaintiffs have had an opportunity to conduct further discovery

pursuant to Federal Rule of Civil Procedure 56(d).


DATED:        April 10, 2019                   Respectfully submitted,


                                    /s/ Michael T. Houchin
                                    MICHAEL T. HOUCHIN

                                    **LAW OFFICES OF
                                    RONALD A. MARRON**
                                    RONALD A. MARRON

*ron@consumersadvocates.com*
Michael T. Houchin
*mike@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
SCOTT J. FERRELL
sferrell@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469
***Counsel for Plaintiffs and the Proposed Class***

*Clark v. The Hershey Company,* Case No. 3:18-cv-06113-WHA
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANT THE HERSHEY COMPANY'S
MOTION FOR SUMMARY JUDGMENT