IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HOWARD CLARK, TODD HALL, ANGELA PIRRONE, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

THE HERSHEY COMPANY, a Delaware corporation,

Defendant.

No. 18-cv-06113 WHA

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this food case, a previous order converted Hershey's Rule 12(b)(6) motion to dismiss into a motion for summary judgment and allowed immediate discovery. For the following reasons, Hershey's motion for summary judgment is **DENIED.**

**STATEMENT**

This action challenges the purported use of an ingredient, malic acid. In Hershey's Brookside Dark Chocolate product line, chocolate-covered candy balls filled with fruit-flavored gel, Hershey claims that malic acid was used as a pH balancer to properly gel the fruit center of the candies, but plaintiffs allege malic acid was used as an artificial flavoring agent. These chocolate balls are sold in bag-shaped packaging, some of which have banners across the top of the front stating "NO ARTIFICIAL FLAVORS, NO ARTIFICIAL COLORS."

Plaintiffs claim that Brookside Dark Chocolate candy products violate California, New York, and federal statutes because each of the products contain malic acid as an additional flavoring ingredient that simulates and reinforces the characterizing flavor, and that the front label should disclose that malic acid serves the function of adding flavor rather than misleadingly suggesting that the product is flavored only by natural fruit juices (Dkt. No. 73 ¶¶ 30–32).

In this putative class action, plaintiffs allege twelve claims, including (1) fraud by omission, Cal. Civ. Code §§ 1709–1710, (2) negligent misrepresentation, Cal. Civ. Code §§ 1709–1710, (3) violation of California's Consumers Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1750, *et seq.*, (4) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, (5) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, (6) breach of express and implied warranties, Cal. Com. Code §§ 2313 and 2314, (7) violations of §§ 349 and 350 of New York General Business Laws, and (8) claims for breach of express and implied warranties under New York U.C.C. §§ 2-313 and 2-314.

Under FDA regulations, malic acid has three prescribed uses in food: as a flavor, as a flavor enhancer, or to help control pH. 21 C.F.R. § 184.1069(c). Hershey argues that (1) malic acid is used with pectin in order to balance the pH and therefore to properly gel the fruit flavors at the center of the candy, (2) malic acid is not used as a flavor, and (3) only the Brookside Dark Chocolates with gelled fruit centers have malic acid in their ingredient list. Hershey states that it properly disclosed malic acid on its nutrition list of ingredients because Hershey used malic acid for an FDA-approved function, pH balancing, and not as a flavor or flavor enhancer.

Given the importance of this factual dispute, Hershey's motion to dismiss was treated as one for summary judgment under Rule 12(d). Immediate discovery into the issue of the functional use of malic acid was allowed and the parties were given reasonable opportunity to present all material pertinent to the motion.

**ANALYSIS**

Under Rule 56(a), a movant is entitled to summary judgment if "there is no genuine dispute as to any material fact." A fact is material when it affects the outcome of the case.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the moving party bears "the initial burden of production and the ultimate burden of persuasion" on summary judgment, *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000), once it has discharged that burden, the nonmovant must "go beyond the pleadings and . . . designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986) (internal citation and quotation marks omitted). The nonmoving party's evidence must be sufficient such that the record, taken as a whole, could support a rational trier of fact in finding for the nonmoving party on that issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If conflicting inferences may be drawn from the facts, the case must go to the jury." *LaLonde v. Cnty. Of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000).

Hershey states that it has cited overwhelming evidence that malic acid functions in the Brookside products not as a flavor, but as a "pH control agent" defined by the FDA as a "substance[] added to change or maintain . . . acidity or basicity, including . . . acids." 21 C.F.R. § 170.3(o)(23). Hershey claims plaintiffs can point to no contrary evidence and argues that plaintiffs' experts acknowledge the legitimacy of elementary food-science practice that acid is used to trigger pectin gelling, and that in some instances "the primary function of [malic] acid [i]s to facilitate the setting of the pectin gel." Plaintiffs' putative expert Dr. Chin concedes that in the Brookside products, "one of the major purposes for the use [of malic acid] is to facilitate the setting of the gel" (Dkt. No. 77 at 16). Thus, Hershey argues, there is no question that the malic acid in the Brookside products functions as a "pH control agent" to set the pectin blend and the fact that malic acid affects the products' taste, as do all acids, does not transform it from a "pH control agent" into a flavor (Dkt. No. 79-3 at 15–16). An ingredient is classified as an artificial flavor based on its function in a product, not its impact on taste. Hershey argues that, having failed to uncover any evidence to support their allegation that malic acid is used functionally as a flavoring ingredient, plaintiffs cannot manufacture a triable fact issue by pointing to the ingredient's impact on taste.

3

Plaintiffs' burden is to provide specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323. Plaintiffs present two items elicited via discovery from Hershey that plaintiffs claim support their material fact issue that malic acid is used as a flavor in the Brookside products. Together, these two items are sufficient such that the record, taken as a whole, could support a rational trier of fact in finding for the nonmoving party on that issue.

*First*, plaintiffs present a chart provided in discovery of an ingredient list for "Crunchy Clusters — Berry Medley Flavors," one of the products sued on. This ingredient list looks at each ingredient and "explains" why that ingredient is used in the product. For malic acid, this chart states, "Is what makes apples pleasantly sour. It's used to give tartness to the center." The list has similar "explanations" for the other acids present in the product (Dkt. No. 75-14 at 2). This Hershey chart sufficiently supports plaintiffs' argument to create a genuine issue for trial. *Second*, also provided in discovery, plaintiffs present an email from former Hershey scientist Joe McLeod that shows a chart that discusses replacing malic acid with another acid in the Brookside Blueberry-Acai product. The email specifically noted "Malic Acid is thought to be important to the flavor profile and for increasing the 'setting time' to prevent pre-gelling during depositing" (Dkt. No. 75-16 at 4). According to deposition testimony of Lauren Davis, Hershey's Senior Research Scientist, McLeod was a principal scientist in chocolate product development that helped develop and support Brookside products. Davis stated that she could not speak to the accuracy of how McLeod wrote his email. Davis did not agree that malic acid is important to the flavor profile of the Brookside products, stating that flavor is not why malic acid is added, that malic acid is added as a functional ingredient to set the pectin and to gel the fruit center of the candy (Dkt. No. 75-8 at 86–88).

This email statement by Hershey principal scientist McLeod that malic acid is "thought to be important to the flavor profile [of the Blueberry-Acai product]," produced by Hershey in discovery, sufficiently supports plaintiffs' argument, contrasted with Hershey's claims, creating a genuine issue for trial.

Hershey argues that if an ingredient meets the FDA-approved "pH function" and has a secondary effect, such as 'affects flavor,' then a manufacturer's choice between ingredients to

4

find the one that will least negatively affect the flavor does not make that 'flavor enhancement' a functional use in the primary sense. Hershey's putative expert witness states that malic acid is not the "characterizing flavor" of the product, and any taste differential is a byproduct of the use of that necessary acid gelling ingredient. Hershey argues that manufacturers must use an acid as a pH balancer and have to therefore take into account the secondary tartness effect by countering with other ingredient choices. Accordingly, "the sour taste malic acid contributes to the Brookside products at best confers an ancillary benefit that is a byproduct of its actual function, which is to lower pH" (Dkt. No. 77 at 18). Hershey argues that this ancillary effect does not make malic acid's tartness a "flavor" according to FDA regulations.

Though manufacturers must make many balancing decisions when taking products to market, here we are only addressing the issue of whether there is a triable material fact issue. Although Hershey states that their use of malic acid only has an ancillary effect of adding a sour taste, as does any acid, Hershey's own documents discuss the use of malic acid in a flavor context and this creates a genuine factual dispute as to the function of malic acid in the Brookside products.

## CONCLUSION

There is a genuine dispute as to whether malic acid acts as a flavoring agent in the Brookside products, elicited from evidence provided by Hershey in discovery. It would be inappropriate to grant a summary judgment motion when a genuine factual dispute exists. For the reasons stated, Hershey's motion for summary judgment is **DENIED**. The parties shall continue to pursue discovery pursuant to the case management schedule.

**IT IS SO ORDERED.**

Dated: May 29, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5