IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

HOWARD CLARK, TODD HALL, ANGELA PIRRONE, individually and on behalf of all others similarly situated,

    Plaintiffs,

  v.

THE HERSHEY COMPANY, a Delaware corporation,

    Defendant.

No. 18-cv-06113 WHA

**ORDER RE MOTION FOR SUMMARY JUDGMENT AND CLASS CERTIFICATION**

## INTRODUCTION

In this food-mislabeling case, defendant moves for summary judgment to dismiss all plaintiffs' claims. For the following reasons, the motion is **GRANTED.**

## STATEMENT

Defendant The Hershey Company sells small ball-shaped dark chocolates with a fruit-flavored center called "Brookside Dark Chocolate." Each of the Brookside products at issue in this action are sold in packages with labels that represent the product is made with "No Artificial Flavors." These products contain malic acid, a synthetic chemical (SAC ¶¶ 6, 18).

Plaintiff Howard Clark purchased the Brookside Dark Chocolate Acai & Blueberry Flavored Product between April and July 2018. Plaintiff Todd Hall purchased the Brookside Dark Chocolate Pomegranate Flavored Product, the Brookside Dark Chocolate Acai & Blueberries Flavored Product, and the Brookside Dark Chocolate Goji & Raspberry Flavored

Product from around 2014 until approximately June 2018. Plaintiff Angela Pirrone purchased Brookside Dark Chocolate Acai & Blueberry Flavored Product and the Brookside Dark Chocolate Pomegranate Flavored Product from approximately March 2014 to August 2018 (SAC ¶¶ 63, 67, 71). Based on these facts, plaintiffs allege defendant's Brookside Dark Chocolate candy products violate California, New York, and federal statutes because the "No Artificial Flavors" labeling statement is false and misleading due to the presence of malic acid in the product.

Plaintiffs filed their initial complaint in October 2018. The operative complaint, filed in March 2019 alleges twelve claims, including (1) fraud by omission, Cal. Civ. Code §§ 1709–1710, (2) negligent misrepresentation, Cal. Civ. Code §§ 1709–1710, (3) violation of California's Consumers Legal Remedies Act (CLRA), Cal. Civ. Code §§ 1750, *et seq*., (4) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, (5) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*., (6) breach of express and implied warranties, Cal. Com. Code §§ 2313 and 2314, (7) violations of §§ 349 and 350 of New York General Business Laws, and (8) claims for breach of express and implied warranties under New York U.C.C. §§ 2-313 and 2-314.

In December 2018, defendant filed a motion to dismiss on the ground plaintiffs failed to state particularized facts that the products use malic acid as an "artificial flavor" for many distinctly flavored products rather than for its actual use as a pH control aid. The motion was treated as a summary judgment motion under Rule 12(d) and denied given the genuine dispute as to whether malic acid acts as a flavoring agent in the Brookside products (Dkt. Nos. 18, 44, 84). In September 2019, plaintiffs moved for class certification. Two weeks later defendant filed the instant summary judgment motion. This order follows full briefing and oral argument.

## ANALYSIS

Under Rule 56(a), a movant is entitled to summary judgment if "there is no genuine dispute as to any material fact." A fact is material when it affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the moving party bears "the initial burden of production and the ultimate burden of persuasion" on summary judgment,

2

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000), once it has discharged that burden, the nonmovant must "go beyond the pleadings and . . . designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986) (internal citation and quotation marks omitted). The nonmoving party's evidence must be sufficient such that the record, taken as a whole, could support a rational trier of fact in finding for the nonmoving party on that issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If conflicting inferences may be drawn from the facts, the case must go to the jury." *LaLonde v. Cnty. Of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000).

### 1. ARTIFICIAL FLAVOR.

As an initial matter, there is a distinction between the terms artificial ingredient and artificial flavor. Plaintiffs cite to various decisions in our district and from the United States District Court for the Southern and Central Districts of California to argue that the two terms are interchangeable. Not so. Although our court of appeals hasn't yet provided any guidance regarding the two terms, FDA regulations define artificial flavor as "any substance, the function of which is to impart flavor." "Artificial ingredients," by contrast, cover a wider range of substances. *See* 7 C.F.R. § 205.2. Put another way, artificial ingredients include all artificial flavors but artificial flavors do not include all artificial ingredients. For example, erythrosine is a red, artificial compound that is used for food coloring. Erythrosine would be classified as an artificial ingredient. It would not, however, be classified as an artificial flavor because it is flavorless and accordingly, not used to impart flavor in a product.

In the instant case, plaintiffs have alleged that each of the Brookside products in question "contain an artificial flavoring ingredient called d-1 malic acid." The crux of plaintiffs' argument based on their second amended complaint is that they were misled by the "No Artificial Flavors" label into believing the products were "flavored only with natural ingredients" (SAC ¶¶ 6–7).

**2.    INJURY AND CAUSATION.**

The California consumer protection laws under which plaintiffs raises claims under allow remedies only to consumers who suffer an injury as a result of the alleged misconduct. An injury can occur in instances where a consumer was deceived by a product's label into spending money to purchase the product he would not have otherwise purchased. *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 317 (2011). An injury can also occur in instances where the product purchased costs more than similar products without misleading labeling. *Koh v. S.C. Johnson & Son, Inc.*, Case No. C-09-00927 RMW, 2010 WL 94265, at *2 (N.D. Cal. Jan. 6, 2010). Causation is also a necessary element under California law. Specifically, plaintiff must demonstrate that he or she would not have bought the product but for the misrepresentation. *Kwikset* at 330. The New York laws plaintiffs raise their claims under similarly provide remedies only to consumers who are injured "by reason of" the alleged mislabeling but does not explicitly require reliance. New York GBL§ 349(h).

**A.    Plaintiff Clark.**

Plaintiff Howard Clark, a California resident, claims he suffered an injury as a result of the alleged product mislabeling because he would not have purchased the Brookside products if had known the product contained d-1 malic acid. He stated in his April 2019 deposition:

> Q:   Now, you've alleged in this lawsuit that you would not have purchased the product, or you would have paid less if you had known that there was DL malic acid in the product. Does that sound correct?
>
> A:   I would not have purchased the product, period.

(Clark Dep. 87:4–12).

The problem, however, is that plaintiff Clark admitted that he took the "No Artificial Flavors" statement as a representation that the product was entirely free of artificial ingredients and based his purchasing decisions on that misunderstanding. In particular, he stated the following at his deposition:

> Q:   And when you say "no artificial flavors" communicates to you that it's natural, do you

4

|   |   |   |
|---|---|---|
|   |   | mean it communicates to you that the whole entire product is natural? |
|   | A: | Yes. Yes, I do, or it wouldn't be on the label if it wasn't all of the ingredients. |

Later on, he stated:

|   |   |   |
|---|---|---|
|   | Q: | So you — so you don't want to eat anything with malic acid in it; is that correct? |
|   | [...] |   |
|   | A: | Correct. |

(*id.* at 43:17–23; 64:16–20).

Even reading the facts in the light most favorable to plaintiff Clark, these statements demonstrate that there is no issue of material fact that he was not injured as a result of the alleged mislabeling. Plaintiff Clark did suffer an injury as required by California law — he would not have purchased the Brookside products if he had known they contained artificial ingredients. However, his injury was not caused by the alleged mislabeling of the product, but rather his misunderstanding that the "No Artificial Flavors" statement meant there were no artificial ingredients whatsoever in the products. Accordingly, regardless of defendant's alleged mislabeling, plaintiff Clark would have suffered the injury. Hershey's motion for summary judgment as to plaintiff Clark in regards to all claims is thus **GRANTED**.

### B. Plaintiff Hall.

Plaintiff Todd Hall, a California resident, began purchasing the Brookside products in 2014. The "No Artificial Flavors" statement did not appear until mid-2017. D-1 malic acid was present in the products the entire time. He claims he stopped purchasing the product because he learned there were artificial flavorings inside. He stated the following in his deposition:

|   |   |   |
|---|---|---|
|   | Q: | Why did you stop buying the products in late 2018? |
|   | A: | Because I learned that I was paying a premium for something that I wasn't getting. I learned that there was some artificial flavorings inside, and I stopped buying it based on that. |

5

(Hall Dep. 62:21– 63:2). As with plaintiff Clark, plaintiff Hall suffered an injury. The issue is, however, that plaintiff Hall was not injured due to his reliance on the "No Artificial Flavors" statement. He stated the following in his deposition:

> Q: You mentioned that you believed the products contained no artificial flavors the first time that you bought them?
>
> A: Yes.

(*id.* at 54:7–11). The "No Artificial Flavors" label appeared in mid-2017 whereas plaintiff purchased the product for the first time in 2014. Plaintiffs have cited to multiple decisions in our district and others in which courts have found that reliance could have still occurred even though the plaintiff purchased the product before and after the alleged mislabeling occurred. *Lanovaz v. Twinings N. Am., Inc*., No. C-12-02646-RMW, 2014 WL 46822 (N.D. Cal. Jan. 6, 2014). Plaintiffs, however, misses the distinction. In those cases, plaintiffs all indicated they had relied on the label following its appearance. For example, in *Rahman,* the plaintiff stated that once the label appeared, he purchased more of the products because he believed it was better than other similar products. Or, similarly, in *Lanovaz,* the plaintiff stated that once she noticed the label, she began purchasing more of the product in question. 2014 WL 46822, at *4. Here, however, plaintiff Hall only claims reliance when he first bought the product, before the label was even present. Following the appearance of the label, there is no indication from the facts that he looked at it or based any purchasing decisions off of it. Plaintiff Hall's decision to stop purchasing the product was because he "learned" from his lawyers following a laboratory testing that the products contained an artificial flavor, and he did not want to purchase a product with artificial flavors, not because of the label.

Accordingly, taking the facts in the light most favorable to plaintiff Hall, there is no genuine dispute of fact that he did not rely on the label. Hershey's motion for summary judgment as to plaintiff Hall in regards to all claims is thus **GRANTED**.

### C. Plaintiff Pirrone.

Plaintiff Angela Pirrone began purchasing the Brookside products in 2010 and periodically until 2018. She claims she would have paid less if she had known the products contained artificial flavors. She stated in her April 2019 deposition:

> Q: So you think 4 to $6 was too much for a product that contained artificial flavors?
>
> A: Yes.
>
> Q: How much would you have been willing to pay if you had liked the taste just as much, but you'd know they had artificial flavors?
>
> A: Half.

(Pirrone Dep. 99:1–9).

Like plaintiff Hall, plaintiff Pirrone claims she relied on the "No Artificial Flavors" label when she first purchased the product in 2010 before the label was even present.

> Q: Okay. So when you made that first purchase, you believed that the product did not contain artificial flavors?
>
> A: Correct.
>
> Q: And what made you believe that?
>
> A: It was labeled as such.
>
> [. . .]
>
> Q: And you recall picking it up and looking at it in the store and seeing no artificial flavors; is that right?
>
> A: Yes. Correct.
>
> Q: And where on the product was that?
>
> A: Right in front.
>
> [. . .]
>
> Q: So the whole time you thought that it did not contain artificial flavors?
>
> A: Correct.

7

(*id.* at 21:21–24:25; 54:3–6). Furthermore, following the first appearance of the label, there is no indication from the facts she changed her purchasing behavior in response to the label. For example, she stated the following:

> Q: After you first bought the products in 2010 or 2011, did you ever think again about whether the contained artificial flavors?
>
> A: No.

(*id.* at 56:8–12).

Plaintiff Pirrone's decision to stop purchasing the product was due to learning from her attorneys that the product contained an artificial flavor. The alleged injury — that she would have paid less if she knew the products contained artificial flavoring — occurred not because she relied on the "No Artificial Flavors" label but because of an initial misunderstanding when the label was not even present. There is no indication that she relied on the label otherwise following its appearance either. Taking the facts in the light most favorable to plaintiff Pirrone, there is no genuine dispute of fact that she did not rely on the label. Hershey's motion for summary judgment as to plaintiff Pirrone regards to all claims is thus **GRANTED**.

## CONCLUSION

For the reasons stated, Hershey's motion for summary judgment is **GRANTED**. Plaintiffs' class certification motion is accordingly **DENIED AS MOOT.** The Court will allow plaintiff to promptly move for another named plaintiff to intervene and to amend the complaint accordingly provided the motion is made by **DECEMBER 5 AT NOON.** However, this does not mean the motion will be granted. It only means the motion will be considered.

**IT IS SO ORDERED.**

Dated: November 15, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE